IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

_____

**BRANDON L. MCMAHAN, AN INDIVIDUAL,**
*Petitioner,*

*v.*

**GRASSHOPPER TRANS, INC., AN ILLINOIS CORPORATION.,**
*Respondent.*

_____

No. CV-25-0287-PR
**Filed July 30, 2026**

_____

Petition for Special Action from the Superior Court in Maricopa County
The Honorable Christopher Whitten, Judge
The Honorable Richard Albrecht, Commissioner
No. CV2024-003517

**AFFIRMED**

_____

Opinion of the Court of Appeals,
Division One
260 Ariz. 521 (App. 2025)

**VACATED**

_____

COUNSEL:

Sean P. Healy, Kristian E. Nelson (argued), Joseph Hubble, Lewis Brisbois Bisgaard & Smith LLP, Phoenix, Attorneys for Grasshopper Trans, Inc.

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix; and Isidore Yetnikoff, Yetnikoff Law Offices, PLLC, Scottsdale, Attorneys for Brandon L. McMahan

_____

CHIEF JUSTICE TIMMER authored the Opinion of the Court, in which VICE CHIEF JUSTICE LOPEZ, JUSTICES BOLICK, BEENE, MONTGOMERY, KING, and CRUZ joined.

_____

CHIEF JUSTICE TIMMER, Opinion of the Court:

**¶1**        Brandon L. McMahan did not properly serve the summons and complaint in his personal injury action against Grasshopper Trans, Inc. ("Grasshopper").   Before Grasshopper appeared in the action, McMahan obtained an entry of default.   We consider whether Grasshopper's conduct after the default was entered waived the service defect as a basis for setting it aside.   We hold that it did not.

## BACKGROUND

**¶2**        In February 2023, a tractor trailer collided with safety barricades at a construction site and drove away.   The barricades struck and injured McMahan, who was working at the site.   The following year, McMahan sued the tractor trailer's owner, Grasshopper, an Illinois corporation, seeking damages for the driver's negligence.

**¶3**        On March 6, 2024, McMahan attempted to serve Grasshopper's Illinois-based statutory agent, Ljubisa Srejovic, by leaving a copy of the complaint with his assistant, Sladana Bojic, at Srejovic's office. Bojic sent the complaint to Grasshopper that day.   But Bojic was not authorized to accept service on Grasshopper's behalf.

**¶4**        On April 15, 2024, McMahan applied for entry of default pursuant to Arizona Rule of Civil Procedure 55 because Grasshopper failed to file an answer or otherwise respond to the complaint.   Grasshopper did not respond within the applicable period, and the default purportedly became effective on April 29.   *See* Ariz. R. Civ. P. 55(a)(1) (providing that the entry of default becomes effective ten days after the application is filed unless the defendant files a pleading or otherwise defends against the complaint); Ariz. R. Civ. P. 6(a)(2) (excluding intermediate Saturdays,

Sundays, and legal holidays for computing time periods less than eleven days).

¶5   On May 21, McMahan moved for entry of default judgment. Several weeks later, on June 11, Grasshopper answered the complaint and denied owning the tractor trailer that hit the barricades. Grasshopper raised insufficiency of service of process as a potential affirmative defense, depending on further factual development.

¶6   On July 9 and again on August 21, Grasshopper unsuccessfully moved to set aside the entry of default under Rules 55(c) and 60(b)(1), respectively. *See* Ariz. R. Civ. P. 55(c) (authorizing a court to set aside an entry of default for good cause); Ariz. R. Civ. P. 60(b)(1) (authorizing relief from an order based on excusable neglect). Notably, Grasshopper repeatedly acknowledged in these filings that it had been "served" on March 6.

¶7   On February 19, 2025, Grasshopper moved for reconsideration, arguing for the first time that McMahan's failure to properly serve the complaint constituted good cause to set aside the entry of default under Rule 55(c). At the superior court's direction, Grasshopper recast its motion as one under Rule 60(b)(4), which authorizes relief from a void judgment, even though a judgment had not yet been entered. The court granted the Rule 60(b)(4) motion and vacated the entry of default. It reasoned that because McMahan had not properly served Grasshopper, the entry of default was void, and Grasshopper neither had nor could have waived its challenge to the order.

¶8   The court of appeals accepted special action jurisdiction and granted relief, vacating the superior court's order granting the Rule 60(b)(4) motion. *See McMahan v. Grasshopper Trans, Inc.*, 260 Ariz. 521, 529 ¶ 36 (App. 2025). It concluded that Grasshopper waived its objection to defective service by failing to raise it in a motion to dismiss or in its answer, voluntarily appearing in the action, and repeatedly acknowledging that it had been served. *See id.* at 525 ¶ 20, 526–27 ¶¶ 24–25. The court recognized that, "even after a judgment becomes final, a party may 'challenge a judgment on the ground that it is void for lack of jurisdiction of the parties.'" *Id.* at 527 ¶ 29 (quoting *Preston v. Denkins*, 94 Ariz. 214, 219 (1963)). But it concluded that the entry of default was not void for lack of personal jurisdiction. *See id.* ¶¶ 29–30. In the court's view, Grasshopper waived its jurisdictional defense by appearing and defending the action

3

without first raising the insufficient service defense. *See id.* The court also reasoned that Grasshopper had held Bojic out as authorized to accept service by repeatedly representing to the superior court that McMahan had served the complaint through Bojic on March 6, 2024. *See id.*

**¶9** We granted Grasshopper's petition for review to decide whether it waived the right to challenge the entry of default under the circumstances here, an issue of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

**¶10** We review a ruling on a motion to set aside an entry of default for an abuse of discretion. *See DeHoney v. Hernandez*, 122 Ariz. 367, 371 (1979). But we review de novo all legal questions encompassed within that ruling, including whether the court acquired personal jurisdiction before entering the default, whether Grasshopper waived its objection concerning service of process, and whether the superior court's entry of default constituted a void order. *See 4QTKIDZ, LLC v. HNT Holdings, LLC*, 253 Ariz. 382, 385 ¶ 5 (2022); *Ruffino v. Lokosky*, 245 Ariz. 165, 168 ¶¶ 9–10 (App. 2018); *In re 2000 Peterbilt Tractor & Trailer, WA LIC: 19601RP, VIN: 1XPSD69X2YD479117*, 240 Ariz. 450, 452 ¶ 6 (App. 2016). We accept the court's factual findings unless they are clearly erroneous. *See Ruffino*, 245 Ariz. at 168 ¶ 9.

### A. McMahan Did Not Properly Serve The Summons And Complaint On Grasshopper

**¶11** McMahan was required to serve the summons and complaint on Grasshopper by delivering a copy to "a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *See* Ariz. R. Civ. P. 4.2(h) (governing service on a corporation located in the United States but outside Arizona). His process server attempted to serve Grasshopper's statutory agent, Srejovic, but instead delivered the documents to her assistant, Bojic. According to an affidavit signed by Grasshopper's owner and managing principal, Bojic was not an officer, director, or managing agent of Grasshopper; Grasshopper had not appointed her to accept service on its behalf; and Grasshopper had not held her out as authorized to do so. Rather, Srejovic alone served as Grasshopper's statutory agent.

4

**¶12**          McMahan concedes he did not properly serve Grasshopper on March 6, 2024, by delivering the summons and complaint to Bojic, and we agree.   As Grasshopper's registered statutory agent, Srejovic was authorized to accept service on its behalf.   *See* A.R.S. § 10-1510(A). Nothing in the record establishes that Bojic was Grasshopper's actual or apparent agent for purposes of accepting service.   *See* Ariz. R. Civ. P. 4.2(h); *Koven v. Saberdyne Sys., Inc.*, 128 Ariz. 318, 322 (App. 1980) (recognizing that an agent authorized by law to receive service of process may include an ostensible or apparent agent).   Because Bojic lacked either actual or apparent authority to accept service, delivering the summons and complaint to her did not constitute service on Grasshopper under Rule 4.2(h).   *See Postal Instant Press, Inc. v. Corral Rests., Inc.*, 186 Ariz. 535, 537 (1996) (requiring strict compliance with service rules).   This is so even though Bojic forwarded the documents to Grasshopper.   *See Falcon ex rel. Sandoval v. Maricopa County*, 213 Ariz. 525, 530 ¶ 27 (2006) (concluding that delivering a notice of claim to one member of the board of supervisors was not service on the board even though the member forwarded such claims to the clerk of the board).

**B.          The Superior Court Lacked Personal Jurisdiction Over Grasshopper When The Default Became Effective, Making That Order Void From The Outset**

**¶13**          The superior court acquired personal jurisdiction over Grasshopper only if McMahan properly served it, Grasshopper consented to jurisdiction, or it made a general appearance in the case—for example, by answering the complaint without raising an insufficient service defense. *See Montano v. Scottsdale Baptist Hosp., Inc.*, 119 Ariz. 448, 452 (1978); *State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 29 ¶ 8 (App. 2003).   "A general appearance is a waiver of notice and if a party appears in person or by attorney he submits himself to the jurisdiction of the court."   *Montano*, 119 Ariz. at 452 (quoting *Lonning v. Lonning*, 199 N.W.2d 60, 62 (Iowa 1972)).

**¶14**          As explained, McMahan did not properly serve Grasshopper. And although Grasshopper eventually appeared in the case, it did not do so until June 11, 2024, when it filed its answer.   Thus, when the default became effective on April 29, 2024, under Rule 55(a)(1), the superior court had not yet acquired personal jurisdiction over Grasshopper because Grasshopper had not been properly served, consented to jurisdiction, or appeared in the action.   *See id.*; *Burton*, 205 Ariz. at 29 ¶ 8; *see also Postal*

*Instant Press, Inc.*, 186 Ariz. at 537 ("[A]s long as service remains incomplete, or is defective, the court never acquires jurisdiction.").

**¶15**        Because the superior court lacked personal jurisdiction over Grasshopper when the default became effective, the entry of default was void from the outset.   *See Shinn v. Ariz. Bd. of Exec. Clemency*, 254 Ariz. 255, 262 ¶ 27 (2022) (explaining that a judgment or order is void, rather than merely voidable, when the court lacks jurisdiction over the affected persons); *Lore v. Citizens Bank of Winslow*, 51 Ariz. 191, 194 (1938) ("It being admitted that there was no service of process and no appearance by the defendant, the judgment was absolutely void."); *Gordon v. Gordon*, 35 Ariz. 357, 368 (1929) (stating that when a court's jurisdiction rests on defective service, later proceedings based on that service are void).   A void judgment or order has no legal effect, and a court must vacate it when an affected party seeks relief.   *See Springfield Credit Union v. Johnson*, 123 Ariz. 319, 323 n.5 (1979); *Preston*, 94 Ariz. at 219; *Hughes v. Indus. Comm'n*, 69 Ariz. 193, 197 (1949); *Gordon*, 35 Ariz. at 368; *Ruffino*, 245 Ariz. at 168–69 ¶ 10; *Austin v. State ex rel. Herman*, 10 Ariz. App. 474, 476 (1969).   This is so even if the party unreasonably delays in asking for relief.   *See Ruffino*, 245 Ariz. at 168–69 ¶ 10.

**¶16**        McMahan nevertheless argues that Grasshopper waived its right to challenge the entry of default by (1) failing to immediately raise the insufficient service defense in a Rule 12(b)(5) motion to dismiss or in its answer, (2) generally appearing and defending the claim, and (3) repeatedly telling the superior court over several months that it had been served.   The court of appeals agreed.   *See McMahan*, 260 Ariz. at 525–27 ¶¶ 18–28.   We do not.

### 1.        Grasshopper's Actions And Inaction After Entry Of Default Could Not And Did Not Validate The Void Entry Of Default

**¶17**        Before addressing McMahan's arguments individually, we identify a flaw common to each: the premise that an affected party's later conduct or inaction can validate a previous default order that was void when entered.   It cannot.

**¶18**        Our decision in *Lore*, which the court of appeals did not cite, is instructive.   There, a judgment creditor obtained an order requiring a debtor, Lore, to appear for what is now referred to as a debtor's examination

so the creditor could find assets to satisfy its judgment against Lore. *See Lore*, 51 Ariz. at 193, 194–95. But Lore had neither been served nor appeared in the proceeding before the judgment was entered. *See id.* at 193. We therefore held that the resulting judgment was "absolutely void" for lack of jurisdiction, and the superior court was "wrong in refusing to vacate the judgment in order that the defendant might be heard on the merits of the case." *See id.* at 194, 197.

¶19 The Court also found that Lore generally appeared in the debtor's examination proceeding by moving to quash the order for his examination, vacate the judgment, and dismiss the action. *See id.* at 196–97. Consequently, we concluded that Lore waived any challenges regarding possible defects in the creditor's post-judgment affidavit, which avowed that a writ of execution on the debtor's leviable property had issued but was returned as unsatisfied.[1] *See id.* at 195. But importantly, Lore's appearance did not retroactively cure the void default judgment underlying that proceeding. *See id.* at 194. To the contrary, we explained that "[a]ppearance after such a judgment is entered against a party, whether general or special, will not cure a want of jurisdiction as to the judgment previously obtained." *Id.* at 194 (adding that "[a] party does not waive the question of jurisdiction or validate a void judgment by a general appearance in support of a motion to set the judgement aside").

¶20 McMahan misreads *Lore*'s discussion of Lore's appearance in the debtor-examination proceedings as holding that a defendant's later general appearance, whenever made, retroactively validates an earlier default entered without jurisdiction. But *Lore* forecloses, rather than supports, that conclusion. The waiver recognized in *Lore* operated prospectively, applying only to the affidavit and execution that remained before the court in the debtor examination proceeding. *See id.* It did not—and, under *Lore*'s express holding, could not—supply the jurisdiction the court lacked when it entered the earlier judgment. *See id.* A general appearance submits a party to the court's jurisdiction from that point

---

[1] Since *Lore*, this Court promulgated Rule 12(b), which authorizes parties to present jurisdictional defenses or objections by motion or pleading without submitting themselves to the court's jurisdiction. Thus, *Lore*'s conclusion that moving to vacate a judgment or dismiss an action for lack of jurisdiction submits the moving party to the court's jurisdiction is no longer valid. *See D. W. Onan & Sons, Inc. v. Superior Court*, 65 Ariz. 255, 258–59, 261 (1947) (noting that Rule 12(b) superseded *Lore* on this point).

forward; it does not reach backward to "unvoid" an order that was void upon entry. *See id.*

¶21      That principle governs here. The default against Grasshopper became effective on April 29, 2024. Grasshopper did not appear in any form until six weeks later, on June 11, 2024, when it filed its answer. Thereafter, it defended the complaint on its merits. Whatever legal effect Grasshopper's answer and litigation defense had, it only operated from June 11 forward. It could not cure a default that was void the moment it was entered. We apply that principle to each of McMahan's waiver arguments below.

     **2.**      **Grasshopper Did Not Waive Its Challenge To The Entry Of Default By Failing To First Raise It In A Rule 12(b)(5) Motion Or Its Answer**

¶22      Rule 12(b)(5) authorizes a defendant to file a motion to dismiss a complaint for insufficient service of process. Ariz. R. Civ. P. 12(b)(5). To avoid waiving this defense, the defendant must either file a Rule 12(b)(5) motion or include the defense in a "responsive pleading." Ariz. R. Civ. P. 12(b), (h)(1)(B). And if the defendant does file a Rule 12(b) motion but omits insufficient service as a basis for dismissal, the defendant waives the right to raise that defense in a later motion. Ariz. R. Civ. P. 12(g)(2), (h)(1)(A).

¶23      The court of appeals concluded that Grasshopper waived its insufficient service defense because it neither filed a Rule 12(b)(5) motion nor properly asserted the defense in its answer. *See McMahan*, 260 Ariz. at 525–26 ¶ 20. The court relied on *Montano*, where we held that the defendants waived an insufficient service defense by first answering the complaint on the merits without raising it and then asserting it in a later motion. *See McMahan*, 260 Ariz. at 526 ¶ 20. Because answering constituted a general appearance, the defendants there voluntarily submitted themselves to the court's jurisdiction. *See Montano*, 119 Ariz. at 452.

¶24      We need not decide whether Grasshopper properly preserved its insufficient-service defense in its June 11, 2024 answer under Rule 12(h)(1)(B). We also do not have to decide whether the answer constituted a "responsive pleading" under Rule 12(h)(1)(B)(ii) or if Grasshopper could have filed a Rule 12(b)(5) motion *before* the court set aside the entry of

default. *See Tarr v. Superior Court*, 142 Ariz. 349, 351 (1984) (stating that "[w]hen a default is entered, a defaulted party loses all rights to litigate the merits of the cause of action," but can participate prospectively in the default judgment proceedings); *Martin v. Sears*, 45 Ariz. 414, 419 (1935) ("So long as parties are in default, they have no right to participate in any further proceedings in the case, except a motion to set aside the default and petition for leave to appear and answer, or some similar matter not going to plaintiff's right of action."); Ariz. R. Civ. P. 55(a)(1) (placing the time for filing a "responsive pleading" for "within 10 days after the application for entry of default is filed"). Even if Grasshopper's answer was a "responsive pleading" but did not preserve the issue and a Rule 12(b)(5) motion was possible, any resulting waiver would operate only from June 11, 2024, forward. *See supra* ¶¶ 17–21. It could not retroactively validate the entry of default that had already become void six weeks earlier; and *Montano*, which did not address post-default conduct as a basis for waiver, did not say otherwise. *See* 119 Ariz. at 452. Rule 12(h)'s forfeiture provisions govern the availability of a defense going forward; they cannot reach back to supply jurisdiction the court lacked at the moment it acted. *See Preston*, 94 Ariz. at 219 (explaining that relief from a void judgment "does not depend upon rules of the court or statute").

### 3. Grasshopper's General Appearance Did Not Waive The Jurisdictional Defect

**¶25** McMahan alternatively argues that, even if Rule 12(h) does not apply, Grasshopper waived the insufficient-service defense through the older common law doctrine that a general appearance submits a defendant to the court's jurisdiction. The court of appeals agreed, relying on *Montano*'s statement that "[t]he appearance of the defendants has the same effect as a timely and valid service of process." *See McMahan*, 260 Ariz. at 526 ¶ 23 (quoting *Montano*, 119 Ariz. at 452).

**¶26** The common law doctrine, like Rule 12(h)'s forfeiture provisions, operates only prospectively. *See supra* ¶¶ 17–21. Even assuming Grasshopper's answer and subsequent filings amounted to a general appearance, that appearance came six weeks after the default that was void from the outset. Under the principle already explained, that sequence forecloses the waiver McMahan and the court of appeals draw from it. Grasshopper's appearance submitted it to the court's jurisdiction from that point forward; it did not validate the entry of default that preceded it. *See supra* ¶¶ 17–21.

¶27        McMahan and the court of appeals cite federal decisions for the opposite conclusion.  *See McMahan*, 260 Ariz. at 528–29 ¶¶ 32–35.  Of those, only one addresses a case where a court found that a defendant waived an insufficient-service challenge to a default judgment through conduct occurring after the default was entered.  In *Trustees of Central Laborers' Welfare Fund v. Lowery*, the Seventh Circuit held that a district court did not err in finding that the defendants had waived their challenge to a default judgment for insufficient service, where the defendants had repeatedly participated in post-judgment collection proceedings.  924 F.2d 731, 733–34 (7th Cir. 1991).  *Lowery* applied a flexible, circumstance-dependent standard, concluding that "[j]ust as a defendant may waive a defense of improper service under Rule 12(b)(5) before entry of judgment, so too can a defendant waive the defense at a later time given the appropriate circumstances."  *Id.* at 733.

¶28        Other federal courts have applied a more categorical standard.  *See, e.g.*, *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981) (holding that a trial court lacks discretion to vacate a default judgment under Federal Rule of Civil Procedure 60(b) where the court "was powerless to enter the judgment in the first instance," including for lack of personal jurisdiction); *Recreational Props., Inc. v. Sw. Mortg. Serv. Corp.*, 804 F.2d 311, 314 (5th Cir. 1986) ("If a court lacks jurisdiction over the parties because of insufficient service of process, the judgment is void and the district court must set it aside.").

¶29        Arizona's rule tracks the categorical approach: once an order is shown void for lack of jurisdiction, "the court has no such discretion but must vacate the judgment."  *Preston*, 94 Ariz. at 219; *see also Gordon*, 35 Ariz. at 368; *Springfield Credit Union*, 123 Ariz. at 323 n.5; *Hughes*, 69 Ariz. at 197; *Ruffino*, 245 Ariz. at 168–69 ¶ 10; *Austin*, 10 Ariz. App. at 476.  Although Arizona courts give weight to federal interpretations of analogous procedural rules, *see Sholem v. Gass*, 248 Ariz. 281, 286 ¶ 19 (2020), federal authority cannot override controlling Arizona Supreme Court precedent, *see Sell v. Gama*, 231 Ariz. 323, 330 ¶ 31 (2013); *Weatherford ex rel. Michael L. v. State*, 206 Ariz. 529, 532–33 ¶¶ 8–9 (2003) ("[S]tate courts are not bound by decisions of federal circuit courts . . . .").

### 4.     Grasshopper Did Not Waive Its Challenge By Repeatedly Acknowledging It Had Been Served

**¶30**     McMahan argues, and the court of appeals agreed, that Grasshopper waived its challenge by telling the court several times that it had been served process.   *See McMahan*, 260 Ariz. at 527 ¶ 28.   The court distinguished *Preston*, which held that even after a final judgment a party may "challenge a judgment on the ground that it is void for lack of jurisdiction of the parties."   *See id.* ¶ 29 (quoting *Preston*, 94 Ariz. at 219). It reasoned that the entry of default was not void in the first place, because Grasshopper had held Bojic out to McMahan and the superior court as authorized to accept service.   *Id.* at 527–28 ¶¶ 29–31.   Under that view, Grasshopper had no valid jurisdictional objection for *Preston* to protect. *See id.* ¶ 31.

**¶31**     Although the court of appeals did not use the term, its holding depends on the doctrine of apparent authority.   But that doctrine, properly applied, does not support the court's conclusion.   Courts measure apparent authority, like actual authority, at the time of the alleged reliance. *See Koven*, 128 Ariz. at 322 (explaining that apparent authority requires both a representation by the principal that another is its agent and justifiable reliance on that representation).   The relevant moment here was March 6, 2024, when McMahan attempted service.   Nothing in the record shows that Grasshopper had represented to McMahan, his process server, or the public by that date that Bojic was authorized to accept service on its behalf. Grasshopper's later statements to the superior court that it had been "served" on March 6 came months afterward and after the default had become effective.   Those statements, therefore, could not have induced McMahan or his process server to rely on Bojic's apparent authority on a day that had already passed.   Whatever else they show, they cannot retroactively create an appearance of authority that did not exist when service was attempted.

**¶32**     Because Grasshopper never held Bojic out as authorized to accept service at the only time that could matter, the entry of default was void for the same reason explained above, *see supra* ¶¶ 13–21, and Grasshopper's later statements do not change that.   The court of appeals' contrary conclusion depends entirely on treating those later statements as if they operated retroactively, which is the same error addressed throughout this opinion.   *See supra* ¶¶ 17–21, 25–26.

**¶33** The court of appeals' reasoning also inverts *Preston*'s rule. *Preston* and the cases on which it relies do not ask whether a party's later conduct is consistent with asserting a jurisdictional defect. They ask whether jurisdiction existed when the court acted. If it did not, "every act theretofore or thereafter performed based upon it is void and without effect." *Preston*, 94 Ariz. at 220 (quoting *Gordon*, 35 Ariz. at 368). *Lore* states the same principle from the opposite direction: a later appearance "will not cure a want of jurisdiction as to the [order] previously obtained." 51 Ariz. at 194; *see also Gordon*, 35 Ariz. at 370 (agreeing that defendants' general appearance brought them before the court for future proceedings without new process but did not retroactively validate the void judgment previously entered without jurisdiction); *Ruffino*, 245 Ariz. at 168–69 ¶ 10 (stating that a court must vacate a judgment or order entered without proper service, even when the party seeking relief unreasonably delayed doing so). *Preston*'s holding cannot be avoided by relying on Grasshopper's acknowledgments of proper service because they had no bearing on the validity of service at the time it was made.

**¶34** In sum, whether the default was valid depends on the jurisdictional facts as they existed when it became effective on April 29, 2024, not on anything Grasshopper did or said afterward. The superior court correctly set aside the default because it lacked personal jurisdiction over Grasshopper at the time of entry.[2]

---

[2] The superior court incorrectly directed Grasshopper to recast its motion as one under Rule 60(b)(4). Rule 55(c) provides that a court may set aside an entry of default for "good cause" and may set aside a default judgment under Rule 60(b). Here, the court had entered a default but had not entered a default judgment. Consequently, the court should have evaluated Grasshopper's motion under Rule 55(c)'s "good cause" standard, not Rule 60(b)(4)'s standard for relief from a void judgment. That imprecision does not affect our analysis. A court confronted with an order entered without jurisdiction has no discretion to leave it in place, whether the standard is framed as "good cause" under Rule 55(c) or as relief from a void judgment under Rule 60(b)(4). *See Preston*, 94 Ariz. at 219. We treat Grasshopper's motion as one properly brought, and properly granted, under Rule 55(c).

**CONCLUSION**

**¶35**        The court of appeals erred by reversing the superior court's order setting aside the entry of default.   Thus, we vacate the court of appeals' opinion and reinstate the superior court's order granting Grasshopper's motion to vacate the entry of default.